William E. JOHNSTON, Plaintiff,

v.

FOSTER–WHEELER CONSTRUCTORS,
INC., Defendant.

Civ. A. No. 94–A–392–N.

United States District Court,
M.D. Alabama,
Northern Division.

Nov. 8, 1994.

James H. Tipler, Andalusia, AL, for plaintiff.

E.L. McCafferty, Terry A. Moore, Mobile, AL, for defendant.

## MEMORANDUM OPINION AND ORDER

ALBRITTON, District Judge.

This cause is now before the court on Defendant's motion to dismiss pursuant to *Fed.R.Civ.P.* 12(b)(1), (2), (3) and (6); alternatively, Defendant moves to transfer this action to the United States District Court for the Southern Division of Florida pursuant to 28 U.S.C. § 1404.

### BACKGROUND

On March 10, 1994 Plaintiff, William E. Johnston, filed his complaint in the Circuit Court of Montgomery County, Alabama, against Defendant. On April 1, 1994, the Defendant timely filed its notice of removal to this court. Removal is based upon diversity jurisdiction. The Plaintiff is an individual resident of Alabama. Defendant, a Delaware corporation, has its principal place of business in Clinton, New Jersey. Although the Plaintiff does not specify the amount of damages claimed, the notice of removal states that the amount in controversy exceeds $50,000 exclusive of interest and costs.

Plaintiff alleges he was wrongfully terminated in retaliation for claiming workmen's compensation medical benefits, in violation of *Code of Alabama* § 25–5–11.1 and *Florida Statutes* Section 440.205. Plaintiff claims compensatory and punitive damages for emotional distress, lost wages and future lost wages.

The pleadings allege the following facts:

In September of 1992, Plaintiff entered into an employment-at-will contract with the Defendant. The place of employment was to be the Turkey Point Power Plant of Florida Power and Light Company, located in Homestead, Florida. The complaint alleges that on October 3, 1992, Plaintiff was injured during the course and in the scope of his employment with Defendant. Plaintiff maintains that he was injured when he was welding near asbestos material and several asbestos particles became imbedded in the surface of the cornea of his eye. Plaintiff claims that

Defendant insisted that Plaintiff continue welding, after he had requested Defendant to arrange medical treatment for his eye pursuant to the Florida Workmen's Compensation Act. Plaintiff further avers that three days later, his eye became swollen shut. Plaintiff was taken to the Miami General Hospital where the asbestos debris was removed. The doctor instructed Plaintiff to stay off the job for twenty-four hours, but Plaintiff's supervisor allegedly sent him back to work. Plaintiff sustained permanent damage to his eye.

Plaintiff submitted an oral claim to Defendant's safety officer for workmen's compensation benefits on or about October 6, 1992. That same day, Plaintiff was terminated. Subsequently, he brought this action and Defendant filed the instant motion.

### STANDARD OF REVIEW FOR MOTION TO DISMISS

A court may dismiss a complaint for failure to state a claim upon which relief may be granted, under Rule 12(b)(6) of the Fed. R.Civ.P., only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *see also Wright v. Newsome,* 795 F.2d 964, 967 (11th Cir.1986) ("[W]e may not . . . [dismiss] unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims in the complaint that would entitle him or her to relief."). A court must accept as true all well-pleaded factual allegations and view them in a light most favorable to the non-moving party. *Hishon,* 467 U.S. at 73, 104 S.Ct. at 2232; *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 249–50, 109 S.Ct. 2893, 2905–06, 106 L.Ed.2d 195 (1989); *see also Marshall County Bd. of Educ. v. Marshall County Gas Dist.,* 992 F.2d 1171 (11th Cir.1993). Moreover, the threshold that a complaint must meet to survive a motion to dismiss for failure to state a claim upon which relief can be granted is "exceedingly low." *Ancata v. Prison Health Services, Inc.,* 769 F.2d 700, 703 (11th Cir.1985).

If a complaint fails to state grounds for subject matter jurisdiction the court may dismiss the claim for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). In deciding whether it has subject matter jurisdiction, the court may consider evidence as well as the pleadings. *Colonial Pipeline Co. v. Collins,* 921 F.2d 1237, 1243 (11th Cir.1991). Federal district courts are empowered to hear cases only by express congressional grants of jurisdiction. Therefore, to invoke the jurisdiction of such courts, a complaint must affirmatively and distinctly allege the statutory basis for the jurisdiction. 1 *Moore's Federal Practice* ¶ 0.60[3] (2d ed. 1989); *See, Kirkland Masonry, Inc. v. Commissioner,* 614 F.2d 532, 533 (5th Cir.1980) (per curiam); *Carnage v. Sanborn,* 304 F.Supp. 857, 858 (N.D.Ga.1969).

In the context of a motion to dismiss for lack of personal jurisdiction in which no evidentiary hearing is held, the plaintiff bears the burden of establishing a prima facie case of jurisdiction over the movant, non-resident defendant. *Morris v. SSE, Inc.,* 843 F.2d 489, 492 (11th Cir.1988) (citations omitted); *Delong Equip. Co. v. Washington Mills Abrasive Co.,* 840 F.2d 843, 845 (11th Cir.1988); *Bracewell v. Nicholson Air Services, Inc.,* 748 F.2d 1499, 1504 (11th Cir. 1984). A prima facie case is established if the plaintiff presents sufficient evidence to defeat a motion for a directed verdict. *Morris,* 843 F.2d at 492. The court must construe the allegations in the complaint as true, to the extent they are uncontroverted by defendant's affidavits or deposition testimony. *Id.* (citations omitted); *Delong,* 840 F.2d at 845; *Bracewell,* 748 F.2d at 1504. Moreover, where the evidence presented by the parties' affidavits and deposition testimony conflicts, the court must construe all reasonable inferences in favor of the non-movant plaintiff. *Delong,* 840 F.2d at 845.

### MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

The Defendant has moved this court to dismiss Plaintiff's complaint for failure to state a claim upon which relief may be granted. *Fed.R.Civ.P.* 12(b)(6). Defendant argues, and Plaintiff concedes, that the com-

plaint fails to state a claim for which relief may be granted under *Code of Alabama* § 25–5–11.1 (1975). Therefore, the court holds that the claim for relief under the Alabama statute should be dismissed for failure to state a claim upon which relief may be granted. The court holds, however, that relief may be granted pursuant to Florida law under the facts presented in the complaint. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations). Therefore, Defendant's motion to dismiss the complaint for failure to state a claim is due to be granted in part and denied in part.

## MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

In the Notice of Removal, Defendant represented that this action was properly removed because this court had original jurisdiction over the action based upon diversity, pursuant to 28 U.S.C. §§ 1332 and 1441. Defendant now argues that this action was improperly removed because this court lacks subject matter jurisdiction. Defendant contends that under the derivative jurisdiction doctrine, this court cannot exercise jurisdiction over this cause because the state court had no subject matter jurisdiction to entertain a case arising under Florida's workmen's compensation law.[1] The court rejects Defendant's argument for the reasons stated below.

The plain language of 28 U.S.C. § 1441(e) allows this court to exercise removal jurisdiction over this action, even if the Alabama state court lacked subject matter jurisdiction over the cause. 28 U.S.C. § 1441(e) provides as follows:

(e) The court to which such civil action is removed is not precluded from hearing and determining any claim in such civil action because the State court from which such

civil action is removed did not have jurisdiction over that claim.

28 U.S.C. § 1441(e). Section 1441(e) unambiguously states that a cause of action, over which a state court lacked jurisdiction, may properly be removed to federal court. Therefore, removal is proper.

Defendant's contention that the derivative jurisdiction doctrine remains viable is meritless. The legislative history of § 1441(e) demonstrates that Congress intended to abrogate the derivative jurisdiction doctrine:

The purpose of [the new subsection (e) ] is to abolish the present judicial rule [the derivative jurisdiction doctrine] that an improvidently brought civil action, the subject matter of which is within the exclusive jurisdiction of a federal district court, must be dismissed when it is removed to the district court by the defendant under 28 U.S.C. § 1441.

H.R.Rep. No. 423, 99th Cong., 2d Sess. 13 (1986). In addition to legislative history, which indicates that Congress intended to abolish the derivative jurisdiction doctrine, courts in many circuits have recognized that Congress intended to eliminate this doctrine upon the enactment of § 1441(e). *Alexander by Alexander v. Goldome Credit Corp.,* 772 F.Supp. 1217, 1220 (M.D.Ala.1991); *Lloyd v. Federal Deposit Ins. Corp.,* 22 F.3d 335, 336 (1st Cir.1994); *Nordlicht v. New York Telephone Co.,* 799 F.2d 859, 863 (2d Cir.1986), *cert. denied,* 479 U.S. 1055, 107 S.Ct. 929, 93 L.Ed.2d 981 (1987); *Rosciszewski v. Arete Assoc. Inc.,* 1 F.3d 225, 233 (4th Cir.1993); *Beighley v. Federal Deposit Ins. Corp.,* 868 F.2d 776, 789 n. 8 (5th Cir.1989); *State of N.D. v. Fredericks,* 940 F.2d 333, 336 (8th Cir.1991); *Nishimoto v. Federman–Bachrach & Assoc.,* 903 F.2d 709, 714 n. 11 (9th Cir.1990).

Under the clear language of § 1441(e), its legislative history, and the weight of authority, this court holds that a cause of action, over which a state court may lack jurisdiction, may properly be removed to federal court. Regardless of whether the state court had jurisdiction over this cause,

---

1. In support of the argument, Defendant cites *Ex parte Tri–State Motor Transit Co.,* 541 So.2d 557 (Ala.Civ.App.1989), which holds that an Alabama Circuit Court lacks subject matter jurisdiction over a claim arising out of the Missouri workmen's compensation laws.

removal is proper under 28 U.S.C. § 1441 because this court has subject matter jurisdiction over this cause based upon diversity, pursuant to 28 U.S.C. § 1332.

## MOTION TO DISMISS FOR LACK OF IN PERSONAM JURISDICTION

■ The United States Supreme Court has identified two types of personal jurisdiction, specific and general. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 411–15 nn. 8 & 9, 104 S.Ct. 1868, 1870–72 nn. 8 & 9, 80 L.Ed.2d 404 (1984). Specific personal jurisdiction derives from a party's contacts with the forum that are related to the cause of action. *Williams Elec. Co. v. Honeywell, Inc.,* 854 F.2d 389, 392 (11th Cir. 1988) (per curiam). General jurisdiction, on the other hand, applies when the forum has no direct interest in the underlying dispute, but it does have an interest in the defendant because the defendant has continuing and systematic contacts with the forum. *Helicopteros,* 466 U.S. at 414, 104 S.Ct. at 1872; *Sea Lift, Inc. v. Refinadora Costarricense de Petroleo, S.A.,* 792 F.2d 989, 992 (11th Cir. 1986).[2]

■ When a non-resident defendant in a diversity case challenges personal jurisdiction, the plaintiff must establish that personal jurisdiction over the defendant comports with (1) the forum state's long-arm provision and (2) the requirements of the due process clause of the fourteenth amendment to the United States Constitution. *Id.* at 391. Because Alabama's long-arm provision, Ala. R.Civ.P. 4.2(a), authorizes the assertion of personal jurisdiction to the limits of the United States Constitution, a plaintiff may fulfill the requirements mentioned above by demonstrating that personal jurisdiction over the defendant meets the requirement of federal due process. *Olivier v. Merritt Dredging Co.,* 979 F.2d 827, 830 (11th Cir.1992), *cert. denied sub nom. South Carolina Property & Casualty Ins. Guar. Ass'n v. Olivier,* —— U.S. ——, 113 S.Ct. 1577, 123 L.Ed.2d 145 (1993); *Morris,* 843 F.2d at 494 n. 3.

## DUE PROCESS ANALYSIS

Due process requires, first, that the defendant have "certain minimum contacts" with the forum state and, second, that the exercise of jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Burnham v. Superior Court of California,* 495 U.S. 604, 616, 110 S.Ct. 2105, 2113, 109 L.Ed.2d 631 (1990) (*quoting International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)).

■ When a controversy is related to or arises from a defendant's contacts with the forum, the Supreme Court has held that a " 'relationship among the defendant, the forum and the litigation' is the essential foundation of *in personam* jurisdiction." *Helicopteros,* 466 U.S. at 414, 104 S.Ct. at 1872 (quoting *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977)). Even when the cause of action does not arise out of or relate to the non-resident corporation's activities in the forum state, due process is not offended by a state's subjecting the corporation to personal jurisdiction when there are sufficient contacts between the state and the corporation. *Id.* (citations omitted).

■ Plaintiff's claims against Foster–Wheeler Constructors, Inc. did not arise out of and are not related to Defendant's activities in Alabama; therefore, in order to comply with constitutional due process, this court must determine whether Defendant's contacts with the State of Alabama are continuous and systematic contacts. *See Helicopteros,* 466 U.S. at 415–16, 104 S.Ct. at 1872–73. If Defendant's contacts with the forum state are deemed to be continuous and systematic, then the exercise of jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice. *Id.* In support of the argument that the Defendant does not have any continuous or systematic contact with the forum state, Defendant of-

---

**2.** Because the Defendant's contacts with the forum are not related to the cause of action in the instant case, this court must determine whether general jurisdiction may be exercised over the defendant. *See Williams Elec. Co. v. Honeywell, Inc.,* 854 F.2d 389, 392 (11th Cir.1988) (per curiam).

fers the following facts: 1) Defendant maintains no offices, facilities, telephone listings, employees or agents in the state of Alabama; 2) Defendant owns no real or personal property in Alabama; 3) Defendant asserts that it does not regularly do business in Alabama; and 4) Defendant has no contracts to perform any services in Alabama at the present time. (Burcin Aff. at 2). However, the fact that Defendant qualified to do business in Alabama, registered an agent in Alabama,[3] and conducted business in Alabama after Plaintiff was terminated,[4] suggests that Defendant has continuous and systematic contacts with Alabama.

Two Supreme Court cases address whether the forum State could exercise general in personam jurisdiction over a non-resident corporation. *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952); *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *See also Francosteel Corp. v. M/V Charm,* 825 F.Supp. 1074 (S.D.Ga.1993) (discussing the exercise of general jurisdiction over non-resident defendant).[5] In both *Perkins* and *Helicopteros,* the Supreme Court refers to the fact that the non-resident defendant did not qualify to do business in the forum State. Both cases also discuss whether the defendants actually engaged in business transactions in the forum state.

In *Helicopteros,* the Supreme Court held that Texas courts could not exercise in personam jurisdiction over the foreign corporation because the corporation's contacts with

Texas were not systematic and continuous. 466 U.S. at 416, 104 S.Ct. at 1872. In *Helicopteros,* the Columbian corporation entered into a contract to provide helicopter transportation for a Peruvian consortium, the alter ego of a joint venture, which had its headquarters in Texas during the consortium's construction of a pipeline in Peru. *Id.* After a helicopter owned by the foreign corporation crashed in Peru, resulting in the death of two United States citizens, an action was instituted in Texas for wrongful death. *Id.* The Supreme Court held that the foreign corporation's contacts were insufficient to satisfy the requirements of the Due Process Clause of the Fourteenth Amendment. *Id.* at 418–19, 104 S.Ct. at 1874–75.

In deciding whether the forum could exercise general personal jurisdiction over the foreign corporation, the Supreme Court examined the foreign defendant's contacts with Texas. The foreign corporation did not maintain an office in Texas and never became licensed to do business in Texas. *Id.* at 416, 104 S.Ct. at 1872. In addition, Helicol never had performed helicopter operations in Texas or sold any product that reached Texas. *Id.* at 411, 104 S.Ct. at 1870. Helicol never solicited business in Texas, never signed any contract in Texas, nor based an employee in Texas. *Id.* The foreign corporation's contacts with Texas included sending its chief executive officer to Texas for contract negotiation, purchasing helicopters, equipment, and training services in Texas, and sending personnel to Texas for training. *Id.* at 411, 104 S.Ct. at 1870. Unlike *Helicopteros,* in the

---

**3.** It is undisputed that the Defendant is qualified to do business in Alabama and has a registered agent for service of process, namely the Prentice–Hall Corporation Systems, Inc., 57 Adams Avenue, Montgomery, Alabama. (*See* Notice of Removal, Ex. A).

**4.** Plaintiff was fired on or about October 6, 1992. (Compl.). Defendant did not cease doing construction work in Alabama until November 24, 1993. (Burcin Aff. at 2).

**5.** Where a charterer of a vessel instituted an action against the owner and manager to recover for the loss of cargo after a vessel sank at sea, the court held it lacked personal jurisdiction over the owner/manager and in rem jurisdiction over the vessel. *Id.* In analyzing whether the defendant had systematic and continuous contacts with the

forum, the court noted that the defendant had never: 1) maintained offices or had agents outside of Denmark; 2) become licensed to transact business in Georgia; 3) sold any real or personal property or performed any service in Georgia; 4) advertised any property, product or service in Georgia; 5) maintained any subsidiary in Georgia; 6) paid for a telephone or established a phone number in Georgia; 7) possessed a bank account in Georgia; 8) owned any real property in Georgia; 9) purchased any interest in any Georgia corporation; 10) maintained any office or business operation in Georgia; 11) based any employee in the state or engaged any general agent in Georgia; 12) maintained any business records in Georgia; or 13) stored any goods or business supplies in Georgia. *Id.* at 1078. The court found that the existence of these factors

instant case, the Defendant was licensed to do business and registered an agent for service of process in the forum state, and has also performed construction services in Alabama.

In *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952), the Supreme Court held that the foreign defendant corporation had sufficient contacts with Ohio so that Ohio courts could exercise general jurisdiction over the defendant. During the Japanese occupation of the Philippine Islands, a Philippine mining corporation temporarily carried on business activities in an Ohio office. *Id.* While engaged in business in Ohio, the president of the corporation was served with summons in an action against the corporation filed in an Ohio state court by a nonresident of Ohio. *Id.* The cause of action did not arise in or relate to the corporation's activities in Ohio. *Id.* The Supreme Court held that Ohio courts' exercise of personal jurisdiction over the corporation would not violate due process. *Id.* at 445, 72 S.Ct. at 418.

The Supreme Court stated that the corporation had carried on "a continuous and systematic, but limited, part of its general business" in Ohio. *Id.* at 438, 72 S.Ct. at 414. In deciding whether the exercise of in personam jurisdiction was proper, the Court explored the defendant's contacts with Ohio. The Court noted that the defendant kept business records, held business meetings, paid salaries, purchased equipment and maintained bank accounts in Ohio. *Id.*

Although Ohio had a statute, which required foreign corporations to acquire a license to do business and to register an agent for service of process, defendant failed to qualify to do business in Ohio. *Id.* Unlike the defendant in *Perkins*, Foster–Wheeler Constructors, Inc. (hereinafter "Foster–Wheeler") did not conduct business meetings or maintain office records in the forum state. However, Defendant's construction work which continued after Plaintiff was terminated, coupled with its license to do business in Alabama, constitutes sufficient minimum contacts for Fourteenth Amendment purposes under the rationale of *Perkins*.

The Supreme Court in *Perkins*, discussed qualification statutes, which require a corporation to designate an agent for service of process and to register to transact business in the State. The Supreme Court stated:

> Today if an authorized representative of a foreign corporation be physically present in the state of the forum and be there engaged in activities appropriate to accepting service or receiving notice on its behalf, we recognize that there is no unfairness in subjecting that corporation to the jurisdiction of the courts of that state through such service of process upon that representative. This has been squarely held to be so in a proceeding *in personam* against such a corporation, at least in relation to a cause of action arising out of the corporation's activities within the state of the forum.

*Perkins*, 342 U.S. at 444–45, 72 S.Ct. at 418 (citation omitted). The Supreme Court also said that "[t]he corporate activities of a foreign corporation which, under State statute, make it necessary for it to secure a license and to designate a statutory agent upon whom process may be served provide a helpful but not a conclusive test." *Id.* at 445, 72 S.Ct. at 418.

The Alabama Supreme Court in *Ex parte Nissei Sangyo America, Ltd.*, 577 So.2d 912, 914 (1991), held that by fulfilling the requirements of the Alabama licensing or qualification statute the foreign corporation submitted itself to the jurisdiction of the courts of Alabama. *See Code of Ala.* § 10–2A–226 (1975).[6] In holding that the foreign corporation, by qualifying to do business in Alabama, submitted itself to the jurisdiction of the forum state, the Alabama Supreme Court stated that "one of the purposes of the qualification statute is to compel foreign corporations to submit themselves to the jurisdiction of the courts of this state." 577 So.2d at 914 (citing *Jones v. Martin*, 15 Ala.App. 675, 74 So. 761 (1917)).

were inconsistent with the exercise of general in personam jurisdiction over the defendants. *Id.*

**6.** *Code of Alabama* § 10–2A–226 (1975) requires a foreign corporation to qualify to do business in Alabama by procuring a certificate of authority from the Secretary of State prior to transacting business in the State. *Code of Ala.* § 10–2A–226 (1975).

Although procuring a license to do business in Alabama alone may not authorize the exercise of in personam jurisdiction over the non-resident defendant, it does demonstrate that the Defendant has purposefully availed itself of the privilege of conducting activities within the forum. *See Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). Because the Defendant acquired a license and continued doing business in Alabama after Plaintiff was terminated, Defendant should reasonably anticipate being haled into court in Alabama, based upon Defendant's contacts with the forum. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

The facts demonstrate that: the employment contract was entered in Florida; the job was principally localized in Florida; Plaintiff was injured in Florida; Plaintiff filed a claim for workmen's compensation benefits in Florida; Plaintiff was allegedly wrongfully terminated in Florida. However, even though this lawsuit stems entirely from activity which took place outside of Alabama, this court holds that Defendant could reasonably have foreseen being haled into court because it qualified to do business and performed construction work in Alabama and hired the Plaintiff, an Alabama resident, to work on the Florida construction site.

Based upon the Alabama Supreme Court's interpretation of Alabama's qualification statute in *Ex parte Nissei Sangyo America, Ltd.,* 577 So.2d at 914, and the Supreme Court's discussion of similar statutes in *Perkins,* 342 U.S. at 444–45, 72 S.Ct. at 417–18, this court holds that Foster–Wheeler's qualification to transact business in Alabama, coupled by the fact that it continued to conduct business in the forum State until November of 1993, allows this court to exercise in personam jurisdiction over the Defendant. The mere fact that it did not actually conduct business here between November, 1993, and the time this suit was filed makes no difference. Since it did not terminate its qualification and its appointment of an agent for service of process, it presumably intended to be available for work in Alabama. This court finds that Defendant has continuous and systematic contacts with the State of Alabama; thus, this court's exercise of in personam jurisdiction over Foster–Wheeler comports with traditional notions of fair play and substantial justice, and does not violate due process. *Helicopteros,* 466 U.S. at 416, 104 S.Ct. at 1872; *Perkins,* 342 U.S. at 437, 72 S.Ct. at 413.

### MOTION TO TRANSFER

Defendant has also moved this court to transfer venue from the Middle District of Alabama to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a). Section 1404(a) of Title 28 of the United States Code provides that:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a).

▆▆▆▆ District courts have broad discretion in deciding whether to transfer an action to a more convenient forum. *See England v. ITT Thompson Industries, Inc.,* 856 F.2d 1518, 1520 (11th Cir.1988). However, the plaintiff's privilege of choosing his venue, at the very least, places the burden on the defendant to demonstrate why the forum should be changed. *Time, Inc. v. Manning,* 366 F.2d 690, 698 (5th Cir.1966); *Sorrels Steel Co., Inc. v. Great Southwest Corp.,* 651 F.Supp. 623, 629 (S.D.Miss.1986). Section 1404(a) provides for transfer to a more convenient forum, but not to one which is likely to prove equally convenient or inconvenient. *Van Dusen v. Barrack,* 376 U.S. 612, 645–46, 84 S.Ct. 805, 823–24, 11 L.Ed.2d 945 (1964). If the transfer would "merely shift the inconvenience from one party to the other," or if the balance of all factors is but slightly in favor of the movant, the plaintiff's choice of venue should be given deference. *Grey v. Continental Mktg. Assoc., Inc.,* 315 F.Supp. 826, 831 (N.D.Ga.1970); *See also, Magnavox Co. v. APF Electronics, Inc.,* 496 F.Supp. 29 (N.D.Ill.1980); *Flowers Indus., Inc. v. Bakery & Confectionery Union Intern. Pension Fund,* 565 F.Supp. 286, 293 (N.D.Ga.1983).

A district court must first determine whether the action could have been brought

in the proposed transferee district court. 28 U.S.C. § 1404(a). This action could have been filed originally in the United States District Court for the Southern District of Florida. The court has original subject matter jurisdiction over this cause based upon diversity. 28 U.S.C. § 1332(a).[7] Because the wrongful termination occurred in Homestead, Florida, and the Defendant conducts business in Florida, the Florida court may properly exercise personal jurisdiction over the litigants. Venue is proper there since all of the events relating to this cause of action occurred in Florida, and the Defendant is subject to personal jurisdiction in Florida. 28 U.S.C. § 1391.

After determining whether the action might have been brought in the transferee district court, the court must decide whether the balance of convenience favors transfer. The Supreme Court identified a number of factors to consider when determining whether transfer is proper in *Gulf Oil Corp. v. Gilbert*, which preceded § 1404(a):

> Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses, and the costs of obtaining attendance of willing witnesses; ... and all other practical problems that make trial of a case easy, expeditious, and inexpensive ... The court will weigh relative advantages and obstacles to fair trial.

330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947); *see also Jewelmasters, Inc. v. May Dept. Stores Co.*, 840 F.Supp. 893, 895 (S.D.Fla.1993). In determining the appropriateness of transfer, a court may also consider where the operative facts underlying the cause of action transpired. *Windmere Corp. v. Remington Products, Inc.* 617 F.Supp. 8 (S.D.Fla.1985); *see also Armco Steel Co., L.P. v. CSX Corp.*, 790 F.Supp. 311 (D.D.C. 1991); *Pope v. Missouri Pac. R. Co.*, 446 F.Supp. 447 (D.C.Okl.1978).

■■■ After a thorough consideration of the facts in this case, the court concludes that transfer is appropriate. The Southern District of Florida is a more convenient forum because potential witnesses reside in Florida. Although Defendant has failed to name any specific witness who resides in the Florida area,[8] the Defendant has indicated that all relevant supervisory personnel, who worked in Homestead, Florida, at the time Plaintiff was terminated, will likely be residing in and around Homestead, Florida, working on a construction project. (Burcin Aff. at 2). Defendant also asserts that the employees of the Florida Power and Light Company's worker's compensation department currently reside in and around West Palm Beach, Florida. *Id.* Plaintiff has identified himself and his treating physician as the only witnesses located in this district. Since this is a wrongful termination suit and not a claim for personal injury, the court fails to see the relevance of the treating physician as a witness. Plaintiff concedes that the foreman who terminated Plaintiff does not reside in this district. In balancing the convenience of the witnesses, the court finds that transfer is proper.

Defendant also states that it would be more convenient for the parties if this action were litigated in the Southern District of Florida. The Defendant is a Delaware corporation with its principal place of business in New Jersey. Defendant states that Foster–Wheeler no longer conducts business in Alabama, but that it maintains a continuing relationship with Florida Power and Light in the Southern District of Florida. Plaintiff counters that litigating this action in Florida would be more costly and inconvenient to him. One party or the other will be inconvenienced wherever the case is tried. Convenience of the parties, therefore, is not a determining factor.

---

7. The district court has diversity jurisdiction for the following reasons: the Plaintiff is resident of Alabama; Defendant, a Delaware corporation, has its principal place of business in New Jersey; and it is undisputed that the amount in controversy exceeds $50,000 exclusive of interest and costs.

8. *See Sorrels Steel Co., Inc. v. Great Southwest Corp.*, 651 F.Supp. 623, 629 (S.D.Miss.1986) (stating that the party seeking a transfer must clearly specify the key witnesses).

It is in the interest of justice to transfer this action. This lawsuit stems entirely from activity which took place outside of Alabama. The facts demonstrate that: the employment contract was entered into in Florida; the job was principally localized in Florida; Plaintiff was injured in Florida; Plaintiff filed a claim for workmen's compensation benefits in Florida; Plaintiff was allegedly wrongfully terminated in Florida; and the claim is based upon a Florida statute. Where none of the conduct complained of took place in the forum selected by Plaintiff, the Plaintiff's choice of forum is of minimal value in determining whether to transfer an action. *Windmere Corp. v. Remington Products, Inc.*, 617 F.Supp. 8 (S.D.Fla.1985); *Chicago, Rock Island, and Pacific Railroad Co. v. Igoe*, 220 F.2d 299 (7th Cir.1955), *cert. denied*, 350 U.S. 822, 76 S.Ct. 49, 100 L.Ed. 735 (1955); *Armco Steel Co., L.P. v. CSX Corp.*, 790 F.Supp. 311 (D.D.C.1991); *Pope v. Missouri Pac. R. Co.*, 446 F.Supp. 447 (D.C.Okl.1978). Alabama has absolutely no connection to this case except that the Plaintiff lives here. Because Florida law controls and the cause of action springs exclusively from activity which occurred in Florida, and outside of this district, the interests of justice dictate that this action is due to be transferred to the Southern District of Florida. Therefore, Defendant's motion to change venue is due to be granted.

### CONCLUSION

For the foregoing reasons, it is hereby ORDERED as follows:

1. Defendant Foster–Wheeler Constructors, Inc.'s Motion to Dismiss for failure to state a claim is GRANTED with respect to the claim brought under *Code of Alabama* § 25–5–11.1 (1975), but DENIED as to the claim brought under Florida law.

2. Defendant's Motion to Dismiss for lack of subject matter jurisdiction is DENIED, and the Motion to Dismiss for lack of in personam jurisdiction is hereby DENIED.

3. Defendant's Motion to Transfer is hereby GRANTED, and this cause is ORDERED transferred to the United States District Court for the Southern District of Florida. The clerk is DIRECTED to take the necessary steps to effect the transfer.