A92A0509. DRENNEN et al. v. FIRST HOME SAVINGS BANK.
(420 SE2d 376)

SOGNIER, Chief Judge.

First Home Savings Bank, S.L.A. brought suit on two promissory notes against the maker, Richmond Hill Venture, Inc. (RHV), an Alabama corporation registered to do business in Georgia, and six individual guarantors of the notes, all of whom are Alabama residents. RHV filed for bankruptcy protection soon after suit was filed, and the individual defendants moved to dismiss on the ground of lack of personal jurisdiction. The trial court denied their motion and granted the bank's motion for summary judgment, and the individual defendants appeal.

The promissory notes were given in connection with construction and equipment financing extended by appellee to RHV for the con-

struction of a motel in Bryan County, Georgia. Appellant Gerald Drennen, Sr. travelled to Georgia in 1985 to inspect and purchase the property on which the motel later was built. Appellants formed RHV in 1986 to buy the tract from Drennen and develop the motel, and the first shareholders' meeting was held in Georgia. All appellants were shareholders in RHV, and appellants Gerald Drennen, Sr., Howard Culbreth, and Charles Bullard were elected officers and directors. RHV sought construction financing from an Alabama loan broker, who arranged for the loans from appellee, a New Jersey corporation. All negotiations concerning the corporate loans and the guarantees required of appellants were conducted between parties in Alabama and New Jersey. The loans were closed and the guarantees signed in Birmingham in 1987 and 1988, and subsequent payments were made to appellee's New Jersey office.

Several of the appellants visited the motel site during the project construction, and all have travelled to the motel on various occasions in connection with their motel management and oversight responsibilities. On May 29, 1990, appellee notified RHV and each appellant that the loans were in default, and appellants Drennen, Sr. and Charles Bullard subsequently met at the motel with representatives of appellee to discuss the status of the loans and to consider workout options. Appellee filed this action on January 22, 1991.

1. Appellants contend the trial court erred by denying their motions to dismiss for lack of personal jurisdiction made on the ground that they had no contacts with Georgia that would provide a basis for the exercise of jurisdiction in this action under OCGA § 9-10-91 (1). In order for a forum to exercise jurisdiction over a nonresident defendant who transacts business in the forum, "(1) The nonresident must purposefully avail himself of the privilege of doing some act or consummating some transaction with or in the forum . . .; (2) The plaintiff must have a legal cause of action against the nonresident, which arises out of, or results from, the activity or activities of the defendant within the forum; and (3) If (and only if) the requirements of Rules 1 and 2 are established, a 'minimum contact' between the nonresident and the forum exists; the assumption of jurisdiction must be found to be consonant with the due process notions of 'fair play' and 'substantial justice.' " (Footnotes omitted.) *Shellenberger v. Tanner*, 138 Ga. App. 399, 404-405 (227 SE2d 266) (1976); see *Davis Metals v. Allen*, 230 Ga. 623, 625 (198 SE2d 285) (1973). The due process inquiry turns on the question whether the defendant has purposefully availed himself of the privilege of doing business in the forum state and has purposefully derived benefits from this interstate activity so that his contacts with the forum state are such that he reasonably should anticipate being haled into court there. *Burger King Corp. v. Rudzewicz*, 471 U. S. 462, 473-475 (105 SC 2174, 85 LE2d 528)

(1985); see *White House, Inc. v. Winkler*, 202 Ga. App. 603, 604 (415 SE2d 185) (1992).

Appellants maintain that this test cannot be met because their contacts with Georgia stemmed from the construction and management of the motel rather than the making of the notes and guarantees, and thus the instant cause of action does not arise out of their activities within the forum. The act giving rise to the instant suit against appellants for nonpayment of the loans was appellants' execution of the guarantees, *Strickland v. Foundation Life Ins. Co.*, 129 Ga. App. 614, 616 (200 SE2d 306) (1973), and the record shows that the guarantees were entered into between Alabama and New Jersey residents and were neither negotiated nor executed in Georgia. However, in considering questions of personal jurisdiction our inquiry is not limited to the execution of the guaranty contracts alone, as "the contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction. It is these factors — prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing — that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." (Citations and punctuation omitted.) *Mayacamas Corp. v. Gulfstream Aerospace Corp.*, 190 Ga. App. 892, 893 (380 SE2d 303) (1989); see *White House*, supra at 604-605. Personal jurisdiction has been found for actions against nonresident guarantors when sufficient contacts existed between the defendants and the overall transaction to establish that the defendants purposefully availed themselves of the privilege of doing business within the state. See id. (extensive negotiations between California resident and Georgia corporation and commitment by nonresident to continuing obligations to resident plaintiff held sufficient to authorize jurisdiction over nonresident); *Strickland*, supra at 615-616 (1) (individuals who were nonresidents at time suit was filed had executed guarantees in Georgia to secure loans to a Georgia business enterprise); accord *Georgia R. Bank &c. Co. v. Barton*, 169 Ga. App. 821 (315 SE2d 17) (1984) (jurisdiction valid against nonresident with ongoing relationship with Georgia bank who was sued in connection with several personal notes made with bank, the arrearages on which had been the subject of several meetings with bank personnel in Georgia).

Having considered all the elements of the instant transaction, we hold that the trial court properly concluded appellants had purposefully transacted business within Georgia so as to establish legally sufficient contacts. Appellants executed the personal guarantees in order to induce appellee to make the notes to RHV, and the proceeds of those notes were used to construct and equip a motel in Georgia

owned and operated by RHV, a corporation registered to do business in Georgia. The loans were secured by real property and fixtures located in Georgia. Given that RHV was incorporated for the express purpose of constructing and operating the motel, the parties undoubtedly intended for the loan payments to be made from the proceeds of the motel's Georgia operations. By constructing the motel in Georgia from the loan proceeds and by travelling to Georgia periodically to oversee its continued operation and to discuss the loan defaults with appellee's Georgia representatives, appellants established a continuing relationship with Georgia in connection with the guarantees. See *White House*, supra at 605; *Barton*, supra. Furthermore, the guarantees contained a Georgia choice of law clause, which, when combined with the ongoing relationship between the parties, reinforces appellants' deliberate affiliation with Georgia and the reasonable foreseeability of litigation here. *Burger King*, supra at 482.

In *Lazzaro v. Charlevoix Lakes*, 310 NW2d 295 (Mich. App. 1981), a case involving facts similar to those presented here, the Michigan Court of Appeals found that personal jurisdiction could be exercised by a Michigan court and that such jurisdiction was consistent with due process. We find that court's analysis persuasive here, as the facts of this case demonstrate the same purposeful business activity out of which the cause of action arises. Georgia courts, like those in Michigan, construe the transacting business component of the long-arm statute to extend the State's jurisdiction to the full extent permitted by procedural due process, *Warren v. Warren*, 249 Ga. 130, 131 (287 SE2d 524) (1982), and under the circumstances presented here requiring appellants to appear in Georgia does not offend traditional notions of fair play and substantial justice. See *Lazzaro*, supra at 297-299; see generally *White House*, supra. Accordingly, we hold the trial court did not err by denying appellants' motion to dismiss.

2. Appellants contend the grant of summary judgment to appellee on the merits of its claims under the guarantees was error because material fact questions remain concerning whether appellee properly gave notice of RHV's default to appellants and allowed them the contractually provided time to cure the default. We do not agree. The record shows that RHV was in default on the notes, that appellee gave notice of this default to appellants, that their partial payment failed to cure the default, and that appellee brought suit well after the four-month period allowed for curing of the default. Appellants' contention that the October notice of continued default was not sufficient because it was sent only to RHV is without merit, as appellants admit they received actual notice of this continued default and the guarantees do not provide that notice to appellants be given in any specific manner in order to be effective. Compare *Orkin Exterminat-*

*ing Co. v. Stevens*, 130 Ga. App. 363, 369 (203 SE2d 587) (1973). Likewise, appellee gave notice of its intent to enforce the attorney fees provision of the guarantees in its complaint, and appellants have failed to demonstrate how this notice, which they obviously received, was insufficient. Accordingly, the trial court properly granted summary judgment to appellee. See generally *Remler v. Coastal Bank*, 179 Ga. App. 25 (345 SE2d 79) (1986).

*Judgment affirmed. McMurray, P. J., and Cooper, J., concur.*

DECIDED JUNE 29, 1992.

*Barrow, Sims, Morrow & Lee, Charles W. Barrow*, for appellants.
*Oliver, Maner & Gray, James L. Pannell*, for appellee.