**C.M.B. FOODS, INC., Plaintiff,**

v.

**CORRAL OF MIDDLE GEORGIA,
et al., Defendants.**

**Civil Action No. 2:04CV009–T.**

United States District Court,
M.D. Alabama,
Northern Division.

March 29, 2005.

Matthew David Fridy, Stephen Paul Leara, Wallace Jordan Ratliff & Brandt LLC, Birmingham, AL, for Plaintiff.

G. Griffin Sikes, Jr., Montgomery, AL, Valerie D. Judah, Dothan, AL, for Defendants.

## ORDER

MYRON H. THOMPSON, District Judge.

Plaintiff C.M.B. Foods, Inc., an Alabama produce supplier, brings this lawsuit against defendants Corral of Middle Georgia, Inc., Harold Stephenson, Howard Stephenson, and Gene Yeager,[1] asserting violations of the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C.A. § 499a *et seq.* This cause is now before

---

1. By agreement of the parties, this court issued an order dismissing defendant Billy Banks from the action on November 18, 2004 (Doc. No. 36).

the court on Corral's motion to transfer venue and the Stephensons' motion to dismiss for lack of subject-matter jurisdiction, personal jurisdiction and failure to state a claim upon which relief can be granted and their alternative motion to transfer venue. For the reasons that follow, the motions to transfer venue will be granted.

## I. Background

C.M.B. is an Alabama corporation based in Montgomery County, Alabama.[2] Corral is a Georgia corporation headquartered in Wrightsville, Georgia; it owns and operates several Golden Corral franchise restaurants and a Sonny's Barbeque restaurant all located in the State of Georgia.[3] Harold Stephenson is a resident of Wrightsville, Georgia and was, at the times relevant to this action, the Vice–President and a director of Corral. Howard Stephenson is also a resident of Wrightsville and was the Secretary, Treasurer, and a director of Corral. According to affidavits submitted by the parties, Yeager is an Alabama resident and was the Corral employee assigned to the C.M.B. account during at least some of the times relevant to this action.[4]

This lawsuit arises out of a series of transactions that occurred during 2003, when Corral established an account with C.M.B. for the purpose of purchasing produce to sell in its restaurants.[5] C.M.B. alleges that, during 2003, it sold an average of $ 27,000 in perishable agricultural commodities to Corral each month. Corral placed the orders for these commodities to C.M.B. at its Montgomery office. C.M.B. loaded its trucks with the commodities in Montgomery, and a truck driver transported the commodities to Georgia and delivered them to Corral's facilities. An agent of Corral then signed the invoices, which were retained by C.M.B. Typically, Corral then sent payment for the ordered commodities to C.M.B.'s facilities in Montgomery County.[6]

C.M.B. alleges that it timely and properly invoiced Corral for the produce it provided and that the defendants did not object to the terms and conditions contained in its invoice. Nevertheless, it claims that the defendants failed to pay for approximately $ 50,274 worth of produce supplied to Corral for use in its restaurants, thereby breaching their contract and violating PACA. Accordingly, C.M.B. filed a complaint in this court alleging breach of contract, PACA violations, and breach of fiduciary duty.

## II. Motions to Transfer Venue

Because a transfer of venue in this case would obviate the need to reach the merits of the Stephensons' motion to dismiss, the court will first consider the defendants' transfer motions. Although Corral and the Stephensons have filed separate motions to transfer, their arguments are identical.

### A. Standard

28 U.S.C.A. § 1404(a) authorizes a district court to transfer a civil action to any other district in which it might have been brought "for the convenience of parties and witnesses, in the interest of justice."

Because federal courts normally afford deference to a plaintiff's choice of forum on a motion under § 1404, the burden is on the movant to show that the suggested forum is more convenient or that litigation there would be in the interest of justice.

---

**2.** Complaint (Doc. No. 1), p. 1.

**3.** Affidavits in support of motion to dismiss (Doc. No. 9), Aff. of Oliver Harold Stephenson, p. 2.

**4.** *Id.*

**5.** *Id.*

**6.** Plaintiffs' response to Defendants' Motions to Dismiss (Doc. No. 12), pp. 2–3.

*In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir.1989). A court, however, has "broad discretion in weighing the conflicting arguments as to venue," *England v. ITT Thompson Industries, Inc.*, 856 F.2d 1518, 1520 (11th Cir.1988); it must engage in an "individualized, case-by-case consideration of convenience and fairness." *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 2244, 101 L.Ed.2d 22 (1988). A court may properly transfer a case to "the forum in which judicial resources could most efficiently be utilized and the place in which the trial would be [easiest, and] most expeditious and inexpensive.'" *Howell v. Tanner*, 650 F.2d 610, 616 (5th Cir. July 13, 1981) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947)), *cert. denied*, 456 U.S. 918, 102 S.Ct. 1775, 72 L.Ed.2d 178 (1982).[7]

### B. Discussion

■ Resolution of a § 1404(a) motion requires a two-step process. First, the court must determine whether the action could "originally have been brought in the proposed transferee district court," *Folkes v. Haley*, 64 F.Supp.2d 1152, 1155 (M.D.Ala.1999) (DeMent, J.); then, the court must determine whether the action should be transferred "for the convenience of the parties [and] in the interest of justice." *Id.*

### i. Propriety of transferee district

■ The threshold inquiry on a § 1404(a) motion is whether the transferee district is a district where the action originally "might have been brought." Pursuant to 28 U.S.C.A. § 1391(b), a non-diversity civil action may be brought only in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." The defendants argue that this case should be transferred to either the Middle or Southern District of Georgia. Although they assert that "the acts or omissions that form the basis for the claims made in the complaint all occurred within the state of Georgia,"[8] they do not specify which of these acts or omissions allegedly took place in the Middle District of Georgia, and which took place in the Southern District of Georgia. The pleadings and evidence currently before the court indicate that Corral's headquarters are located in Wrightsville, Georgia, which is located in the Southern District of Georgia. The Stephensons also reside in Wrightsville.[9] Therefore, for the purposes of the transfer motions, the court assumes that relevant acts and omissions involving the agricultural commodities in question were made in Wrightsville, and concludes that the United States District Court for the Southern District of Georgia constitutes a proper place of venue for the trial of this action pursuant to § 1391(b).

### ii. Balance of justice and convenience

■ The court must next consider whether the balance of justice and convenience favors transfer. When making this determination, courts "generally consider the following factors: the plaintiff's initial choice of forum; the convenience of the parties; the convenience of the witnesses; the relative ease of access to sources of proof; the availability of compulsory process for witnesses; the location of relevant

---

7. In *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

8. Motion of defendant Corral to transfer venue (Doc. No. 7), p. 1. *See also* motion of defendants Harold and Howard Stephenson to dismiss or transfer venue (Doc. No. 8), p. 2.

9. Affidavits in support of motion to dismiss (Doc. No. 9), Aff. of Oliver Harold Stephenson, p. 1, Aff. of Howard Stephenson, p. 1.

documents; the financial ability to bear the cost of the change; and trial efficiency." *Lasalle Bank v. Mobile Hotel Properties*, 274 F.Supp.2d 1293, 1301 (S.D.Ala. 2003) (Granade, J.) (quoting *Holmes v. Freightliner, L.L.C.*, 237 F.Supp.2d 690, 692 (M.D.Ala.2002)) (Albritton, C.J.). In addition, "an important consideration in deciding appropriate venue is whether a forum can meet the personal jurisdiction and venue requirements for most or all of the defendants." *Home Insurance Co. v. Thomas Industries, Inc.*, 896 F.2d 1352, 1358 (11th Cir.1990) (quoting *Delong Equipment Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 857 (11th Cir.1988)).

■ The court recognizes that C.M.B. is located in Montgomery County, Alabama, and, accordingly, the court affords great deference to C.M.B.'s choice to litigate this matter in the Middle District of Alabama. The court further acknowledges that, although the majority of the defendants and their witnesses are located in Georgia, a number of C.M.B.'s witnesses reside in Montgomery County, Alabama, and recognizes that it would clearly be more convenient for these witnesses if this case remained in the Middle District of Alabama.

However, notwithstanding C.M.B.'s preference and issues of convenience, the court is concerned that a substantial question remains as to whether the Stephensons have had "minimum contacts" with the State of Alabama such that this court can properly exercise personal jurisdiction over them in this lawsuit.[10] For this reason, the court concludes that the action should be transferred to the Southern District of Georgia.

As previously noted, the Stephensons have alternatively asserted a motion to dismiss, arguing, among other things, that although this court may have jurisdiction over Corral, it lacks jurisdiction over them as individuals because they have not recently traveled to the State of Alabama and they played no role in setting up or managing Corral's account with C.M.B.[11] Thus, the Stephensons argue that they lack the requisite minimum contacts with the State of Alabama in this case.

C.M.B. responds that the Stephensons have had minimum contacts with the State of Alabama and that, therefore, this court's exercise of personal jurisdiction is proper. It alleges that they engaged in a number

---

10. The due-process clause of the Fourteenth Amendment to the United States Constitution requires, among other things, that a defendant have "certain minimum contacts" with a forum state before a court in that state may properly assert personal jurisdiction over him. *Burnham v. Superior Court of California, County of Marin*, 495 U.S. 604, 618, 110 S.Ct. 2105, 2114–15, 109 L.Ed.2d 631 (1990) (quoting *International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)).

11. In his affidavit, Harold Stephenson states, "To the best of my recollection and belief, I have not been into the state of Alabama in the last twenty years.... I was not involved in any manner in setting up or managing the account ... with C.M.B. Foods; to the best of my recollection and belief, I have never had any meeting or phone conversation with any agent or employee or official of C.M.B. Foods." Affidavits in support of motion to dismiss (Doc. No. 9), Aff. of Oliver Harold Stephenson, p. 2.

Similarly, Howard Stephenson states, "With the exception of a trip with my son to visit the Space Camp in Huntsville, Alabama, several years ago, to the best of my recollection and belief, I have never otherwise been into the state of Alabama.... I was not involved in any manner in setting up or managing the account ... with C.M.B. Foods; to the best of my recollection and belief, I have never had any meeting or phone conversation with any agent or employee or official of C.M.B. Foods." Affidavits in support of motion to dismiss (Doc. No. 9), Aff. of James Howard Stephenson, pp. 1–2.

of activities in the State, including making numerous telephone calls to Yeager at his office in Dale County, Alabama, regarding purchases of agricultural commodities. C.M.B. further alleges that,

"A number of these phone calls from Harold dealt specifically with the debt that Corral had incurred to C.M.B. due to its failure to pay for the perishable agricultural commodities that it ordered from C.M.B.... Like Harold, Howard Stephenson also contacted Yeager on numerous occasions at his office in Dale County, Alabama relative to the operation of Corral and its purchases." [12]

Furthermore, C.M.B. alleges that Harold Stephenson sent numerous facsimiles to Yeager concerning the debt Corral owed to C.M.B.[13]

██ C.M.B.'s responses, however, consist merely of broad and non-specific allegations regarding the Stephensons' contacts with Alabama, and they do not provide the court with any affidavits or other evidence relating to these jurisdictional issues. Thus, it is questionable whether the court may afford any weight to the allegations at all.[14] However, even treating the allegations as true, it is highly doubtful that the alleged contacts are sufficient to trigger this court's exercise of personal jurisdiction over the Stephensons.

██ First, even if the Stephensons had numerous conversations with Yeager regarding "the purchase of agricultural commodities," as C.M.B. contends, such contacts are not specifically related to this cause of action, and thus cannot serve as a basis for this court to exercise specific jurisdiction over the Stephensons.[15] *See Vermeulen v. Renault,* 985 F.2d 1534, 1546 (11th Cir.1993), *cert. denied,* 508 U.S. 907, 113 S.Ct. 2334, 124 L.Ed.2d 246 (1993) ("To constitute constitutionally minimum contacts, ... the defendant's contacts with the applicable forum must ... be related to the plaintiff's cause of action or have given rise to it").

Furthermore, the only contacts alleged by C.M.B. that are related to this cause of action are described in vague terms, and,

---

**12.** Plaintiff's response to defendants motion to dismiss (Doc. No. 12), p. 18.

**13.** *Id.*

**14.** The court must accept the facts alleged in the plaintiff's complaint as true for the purposes of determining whether personal jurisdiction over a defendant has been established, to the extent they are uncontroverted by the defendant's affidavits. *Madara v. Hall,* 916 F.2d 1510, 1514 (11th Cir.1990). However, if a defendant provides evidence refuting personal jurisdiction in the form of affidavits, as here, the plaintiff is typically required to produce some *evidence* (rather than additional allegations) in response. *See, e.g., Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 66, n. 9 (3d Cir.1984) ("Once the [personal jurisdiction] defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence.... [A]t no point may a plain-

tiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction").

**15.** The Supreme Court has identified two types of personal jurisdiction: specific and general. *See Helicoperos Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–15 nn. 8 & 9, 104 S.Ct. 1868, 1872 nn. 8 & 9, 80 L.Ed.2d 404 (1984). General jurisdiction arises from a party's "systematic and continuous" contacts with the forum state *unrelated* to the litigation. *Id.* at 416, 104 S.Ct. at 1868. Specific jurisdiction derives from a party's contacts with the forum that are *related* to the cause of action. *Id.* at 414 n. 8, 104 S.Ct. at 1872 n. 8. It is clear to the court that the Stephensons have not had sufficient contacts with the State of Alabama to give rise to general jurisdiction; thus, the only remaining question is whether their contacts have been sufficient for this court to invoke *specific* jurisdiction over them in this case.

at best, establish minimum contacts with respect to only one of the Stephensons. For example, C.M.B. alleges that "a number of ... phone calls from Harold [to Yeager in Alabama] dealt specifically with the debt that Corral had incurred to C.M.B. due to its failure to pay for the perishable agricultural commodities that it ordered from C.M.B.," and that Harold sent numerous facsimiles to Yeager in Alabama regarding this debt.[16] However, C.M.B. does not provide any specific information regarding the dates, frequency, number, or substance of these contacts. Furthermore, C.M.B. has not asserted that *Howard* Stephenson had any contacts with Alabama specifically related to Corral's account with C.M.B. or the alleged debt that is the subject of this action; rather, it simply claims that Howard Stephenson had contacts with Yeager in Alabama relating more generally to "the operation of Corral and its purchases." [17]

█ In sum, it is highly doubtful that C.M.B. has adequately demonstrated that the Stephensons have had minimum contacts with the State of Alabama such that a court located in Alabama may properly exercise personal jurisdiction over them.[18]

Because the court's personal jurisdiction over the Stephensons is greatly doubtful and because C.M.B. will not be significantly inconvenienced by a transfer to Georgia, the court finds that pursuant to 28 U.S.C.A. § 1404(a), it is in the interest of justice to transfer this action to the Southern District of Georgia, a forum that unquestionably meets the venue *and* personal jurisdiction requirements for all of the defendants in this lawsuit. Transfer is particularly appropriate here so that the court and the parties do not expend significant judicial resources "in further addressing an issue collateral to the merits of the underlying dispute and which could be challenged on appeal." *Fort Knox Music, Inc. v. Baptiste,* 139 F.Supp.2d 505, 512 (S.D.N.Y.2001).

### III. Conclusion

For the foregoing reasons, it is the ORDER, JUDGMENT, and DECREE of the court that defendant Corral of Middle Georgia, Inc.'s motion to transfer venue (Doc. No. 7) and defendants Harold and Howard Stephenson's motion to transfer venue (Doc. No. 8) are granted and this lawsuit is transferred in its entirety to the United States District Court for the Southern District of Georgia.

Any other pending motion is left for resolution after transfer.

The clerk of the court is DIRECTED to take appropriate steps to effect the transfer.

---

16. Plaintiff's response to defendants motion to dismiss (Doc. No. 12), p. 18.

17. *Id.*

18. The court also finds tenuous C.M.B.'s argument that this court has personal jurisdiction over the Stephensons because they allegedly breached their fiduciary duty to C.M.B. to maintain the trust established pursuant to 7 U.S.C.A. § 499e(c), and thus knowingly caused an injury in the State of Alabama. It is true that a defendant who commits an deliberate, nonfortuitous tort intending injury in another State affirmatively establishes minimum contacts with the State in which the injury occurred. *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984); *Coblentz GMC/Freightliner, Inc. v. General Motors Corp.,* 724 F.Supp. 1364 (M.D.Ala. 1989) (Thompson, J.). However, the court was unable to locate any case or statute indicating that breach of fiduciary duty is categorically treated as an intentional tort under Alabama law. In the absence of sufficient legal support for this argument, the court declines to exercise personal jurisdiction over the Stephensons on this basis.